**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   2:23-CR-90-1 |
| | ) |
| DREW PIERCE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM ORDER**

Defendant Drew Pierce pled guilty to two fraud-related conspiracy counts. ECF 289.  Mr. Pierce was CEO and, before that, CFO of Primary Health Network. *See id*. at 1–2; ECF 122 at ¶ 4.  During his time in these leadership positions, he caused PHN to enter into a number of inflated construction-related contracts, where he was able to skim the difference between the inflated invoices and the lower amounts actually paid by contractors to do the work.  *See* ECF 122 at ¶ 16–106.  As part of the plea agreement, Mr. Pierce acknowledged the specific loss amounts and his liability for restitution as follows: "Defendant Drew Pierce is liable for $3,107,651.35 in restitution to Primary Health Network" (PHN), consisting of "$493,868.72 from the Excel Scheme," "$543,968.03 from the TopCoat scheme," "$277,529.48 from the personal benefits scheme," and "$1,792,285.12 from the JDS scheme."  ECF 289 at 6.

Mr. Pierce now argues that, under the Mandatory Victims Restitution Act (MVRA), the restitution amount should be reduced to $0, because of certain off-sets received by PHN.  ECF 437, 438, 445.  On careful review, the Court disagrees, for three reasons.

First, Mr. Pierce is precluded from asking for an off-set. Put differently, by asking for one, he would be in breach of the restitution provision in the plea agreement, which the Court could potentially enforce by specific performance. Mr. Pierce argues that the plea agreement doesn't prevent him from asking for an off-set. ECF 437 at 7–10, 17–20. Not so.

While the agreement states that the Court retains the authority to determine restitution and the parties make only recommendations, it does, importantly, state that Mr. Pierce is recommending that he is "liable" for the $3.1 million in restitution to PHN. ECF 289 at 6. In this context, the word "liable" means he is "legally obligated" to pay the very precise amounts set forth. *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 444 (3d Cir. 2018) (finding "[l]iability" to "mean[] the quality, state, or condition of being legally obligated or accountable," citing *Liability*, Black's Law Dictionary (10th ed. 2014) and *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 217 (3d Cir. 2010)) (cleaned up). Mr. Pierce cannot now argue that he is "legally obligated" to pay $0. That would constitute a breach of the plain terms of the plea agreement.[1]

Second, even if Mr. Pierce could argue for an off-set without breaching the plea agreement, the Court isn't convinced that his legal hook works here. That is, Mr. Pierce invokes Section 3663A(b)(1) to ask for an off-set. But it's not clear to the Court

---

[1] To be clear, given that there are other grounds to reject Mr. Pierce's request for an off-set, the Court finds any breach to be harmless, and so need not go down the path of ordering a separate proceeding as to remedies. *See United States v. Yusuf*, 993 F.3d 167, 181–82 (3d Cir. 2021) (describing procedure for specific performance where there is a plea-agreement breach).

that that provision applies to offenses involving basically theft of money. The provision states that it applies "in the case of an offense resulting in damage to or loss or destruction of property," and then goes onto describe how one values lost or damaged property. 18 U.S.C. § 3663A(b)(1). This, of course, is a case about stealing money, not misappropriating real or personal property. Mr. Pierce cites no cases where the off-set provision of Section 3663A(b)(1) has been applied where the offense concerns solely theft of money.

Third, even assuming a legal basis to ask for an off-set, Mr. Pierce hasn't met his burden in terms of proving one up. Mr. Pierce attempts to do so by pointing to two interlocking civil settlements involving PHN. ECF 437 at 6, 10–17. In the first, the non-profit FQHC-MSF agreed to withdraw as a member and manager of Lewistown-MSF, granting PHN control and transferring title of Transfer Health Center to PHN. ECF 438-2 at ¶ 5, 8. Based on PHN's FY 2024 Consolidated Statement of Financial Position, the value of those transferred assets is, respectively, $1,883,007 and $2,020,111, totaling $3,903,118. ECF 437 at 11. In the second, insurers collectively paid PHN $100,000, in equal shares, on behalf of Mr. Pierce and his three individual co-defendants in the civil action.[2] ECF 438-1 at ¶ 5. These settlement agreements resolved "all manner of action . . . known or unknown . . . which were raised or could have been raised as it relates to the subject of the Civil Actions." ECF 438-1 at ¶ 6; ECF 438-2 at ¶ 12. And the civil actions included

---

[2] Mr. Pierce doesn't argue that the $25,000 he agreed to pay as part of this settlement should count as an off-set—seemingly in part because the insurance which paid this settlement amount was funded by PHN. *See* ECF 433 at 28:13–15, 56:3–8.

allegations relating, in varying degrees, to the four schemes charged in the indictment. *See* ECF 437 at 12–16.  In both agreements, however, PHN expressly reserved the right to seek criminal restitution.  ECF 438-1 at ¶ 4, 6; ECF 438-2 at ¶ 4, 12.

Mr. Pierce argues that, because the allegations in the civil complaint and the criminal indictment share some overlap and the civil settlements comprehensively resolved all civil claims, FQHC-MSF's settlement payments compensated PHN for the harms that Mr. Pierce caused through the Excel, TopCoat, personal benefits, and JDS schemes.  ECF 437 at 11–17.  Following this logic, Mr. Pierce contends that he should receive an off-set because the FQHC-MSF settlement constituted a return of some of the property at issue in the civil action, without defining what specific property. *Id.* at 22–26 (citing *United States v. Fiorentino*, 149 F. Supp. 3d 1352, 1363 (S.D. Fla. 2016)).

The Court disagrees.  There is no basis to essentially give Mr. Pierce "credit" for the value FQHC-MSF transferred when he neither was a party to that settlement agreement nor had any interest relating to that agreement.

Further, any off-set here would violate the clear intent behind the transfer—compensating PHN for FQHC-MSF's breach of the Lewistown-MSF Operating Agreement and failure to make a capital contribution to Lewistown-MSF.  ECF 436 at 5–9.  This loss was distinct from the funds that Mr. Pierce and his co-Defendants stole through the four schemes, for which the government seeks $3.1 million in restitution.  None of the proceeds from the Excel scheme or personal benefits scheme

were connected to FQHC-MSF, and any proceeds from the TopCoat and JDS schemes related to FQHC-MSF only passed through FQHC-MSF on their way to Mr. Pierce and his co-Defendants. *Id.* The settlement proceeds here are too disconnected to the restitution amounts, and so cannot off-set them.[3]

*****

For these reasons, the Court **DENIES** Mr. Pierce's request for an off-set. An amended final judgment accompanies this order, requiring Mr. Pierce to pay Primary Health Network $3,107,651.35 in restitution jointly and severally with his co-Defendants, allocated in a manner consistent with the terms of the plea agreement.

DATED this 18th day of May, 2026.

BY THE COURT:
/s/ *J. Nicholas Ranjan*
United States District Judge

---

[3] Mr. Pierce relies on *United States v. Fiorentino* to argue otherwise. ECF 437 at 24–27. But the circumstances here differ from *Fiorentino*. There, the court granted the off-set because the civil plaintiff failed to pinpoint the loss compensated by the defendant's $11 million civil settlement payment, arguing merely that it "was compensation for some other unspecified purpose, unrelated to the crime of conviction." *Fiorentino*, 149 F. Supp. 3d at 1363. By contrast, here, the facts are clear. The FQHC-MSF settlement re-paid PHN for a different loss arising from different conduct. So the value transferred to compensate for that harm doesn't apply to Mr. Pierce.